## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MARIO J. CELLAROSI** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | |
| | * | **Civil No. PJM-06-2525 (lead case)** |
| **CARLOS M. GUTIERREZ, SECRETARY,** | * | **Civil No. PJM-06-2845 (consolidated)** |
| **UNITED STATES DEPARTMENT OF** | * | |
| **COMMERCE** | * | |
| | * | |
| **Defendant** | * | |

## OPINION

Mario J. Cellarosi has sued his employer, Carlos Gutierrez, Secretary of the Department of Commerce ("the Agency"), alleging age discrimination and retaliation pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").[1] The matter is before the Court on the Agency's Motion to Dismiss or, in the Alternative, for Summary Judgment.[2] No hearing is necessary to dispose of this matter. *See* Local R. 105.6 (D. Md. 1999). For the following reasons, the Court GRANTS the Agency's Motion to Dismiss as to Cellarosi's

---

[1] Cellarosi's original Complaint, solely for age discrimination, was docketed as PJM-06-Civil-2525. Thereafter, he filed a second lawsuit, docketed as AW-06-Civil-2845, which added a claim of retaliation (styled "reprisal") to the original claim. The Court consolidated the two cases under the original PJM docket number.

[2] Cellarosi filed both of his Complaints as well as his Opposition to Defendant's Motion *pro se*. Since then, counsel has entered an appearance on Cellarosi's behalf and has gone forward on the Opposition paper filed by Cellarosi without amendment or supplement. However, on June 28, 2007, counsel filed a Motion to Amend Complaint, requesting: (1) damages for the Agency's failure to award Cellarosi a performance pay increase or bonus in fiscal year 2006, (2) a jury trial for all issues triable by jury, and (3) damages in amounts be determined at trial based upon the evidence. While the Government does not oppose Plaintiff's Motion to Amend, the Court finds that none of Plaintiff's requests precludes summary judgment on the original Complaint. The Court is at liberty to deny leave to amend where amendment would be futile. *See, e.g., Foman v. Davis*, 371 U.S. 178, 182 (1962); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509-10 (4th Cir. 1986). The Court finds that the proposed amendments do not rectify the weaknesses in the original Complaint, discussed *infra*, nor do they change the outcome. Accordingly, the Court DENIES Cellarosi's Motion to Amend Complaint as futile.

performance bonus claims for fiscal years 2001, 2003, and 2005. The Court GRANTS the Agency's Motion for Summary Judgment as to Cellarosi's remaining claims.

# I.

The relevant facts are these:

Cellarosi, age 73, has worked at the National Institute of Standards and Technology ("NIST") since 1974, when he was 40 years old. He began as a Physicist in the Ceramics Division of the Materials Science and Engineering Laboratory ("MSEL") and at all times had a pay band of ZP-1310-IV.[3] In addition to his duties as a Physicist, Cellarosi served as an Equal Employment Opportunity ("EEO") Counselor in NIST's Office of Civil Rights from May 18, 1995 through August 23, 1999. In his capacity as an EEO Counselor, Cellarosi advised EEO complainants of their rights and counseled them regarding deadlines for filing complaints and other procedural matters.

The chronology pertinent to the case picks up in 1999. In that year, Cellarosi, acting in his capacity as an EEO Counselor, advised an NIST executive regarding the filing of an EEO complaint. According to Cellarosi, the Director of the Office of Civil Rights subsequently informed him in a voice-mail message that certain NIST officials were "pissed off" at him because of his efforts to counsel a high-level NIST employee. There is no evidence, however, that Cellarosi's supervisors, while cognizant of his service as an EEO Counselor, were ever aware of this incident or of any details of Cellarosi's counseling performance, negative or otherwise.

---

[3] NIST operates an Alternative Personnel Management System ("APMS") that divides employees into four career paths: ZP (Scientific and Engineering), ZT (Scientific and Engineering Technicians), ZA (Administrative), and ZS (Administrative Support). *See* Alternative Personnel Management System (APMS) at the National Institute of Standards and Technology, 62 Fed. Reg. 54,604, 54,607 (Dep't of Commerce Oct. 21, 1997). Additionally, rather than a GS grade, each NIST employee occupies one of five alternative pay bands. *Id.* For those in the ZP career path, Level III is equivalent to GS-11/12 and Level IV is equivalent to GS-13/14. *Id.* For those in the ZT career path, Level III is the equivalent of GS-9/10 and Level IV equates to GS-11/12. *Id.*

In February 2002, Gabrielle Long, then Acting Chief of the Ceramics Division, became aware that the division was facing a budget shortfall of approximately $1,400,000. After consulting with Stephen Freiman, then Deputy Director, Long determined that a division reorganization and corresponding change in program priorities would be necessary to accommodate the shortfall and that the reorganization would require a Reduction in Force ("RIF"). Working together, Long and Freiman compiled an initial list of division positions that they determined were no longer necessary. According to Freiman, the list identified positions that were not expected to deliver significant results to NIST, did not warrant continued support, or could no longer be funded by outside sources. Cellarosi's position was among those included.

At the time Long became aware of the budget shortfall, Cellarosi's primary responsibility was to perform research on the physical properties of automobile headlamps and to create a headlamp database for use by the Office of Law Enforcement Standards at the Department of Justice ("DOJ"). Shortly before the budget shortfall, DOJ eliminated all funding for Cellarosi's headlamp research. According to Freiman, DOJ's decision to eliminate that funding was the reason for the inclusion of Cellarosi's position on the initial list. Since that time, it may be noted, DOJ has not reinstated funding and work on headlamp research has not resumed.

In May 2002, Long and Freiman met with the five Group Leaders in the Ceramics Division to discuss the initial list of positions to be eliminated. According to Said Jahanmir, one of the Group Leaders present during the discussion, the ages and retirement eligibility of certain individuals on the list were discussed. Jahanmir states that "a few chuckles and statements were made that these individuals should retire." However, other Group Leaders present during the meeting refute Jahanmir's assertions. Moreover, not long before Jahanmir first gave this account,

the Agency informed him that it intended to relieve him of his supervisory position and scientific responsibilities and shortly thereafter Jahanmir resigned.

By June 2002, Long and Freiman, with input from the Group Leaders, had established a list of nine individuals, including Cellarosi, whose positions would be eliminated pursuant to the RIF. The affected individuals ranged in age from 35 to 68. The average age of those individuals was 52 years. According to the Agency, the average age of the 47 scientists in the Ceramics Division as a whole was also 52 years, with only six scientists under the age of 40. The list of positions to be terminated via the RIF was later narrowed to five. One position was removed from the list after its funding was restored. Another scientist opted to retire. Two other scientists were reassigned to open positions in other divisions. The remaining five individuals ranged in age from 47 to 68, with an average age of 56 years. Cellarosi, at the time, was 68.

Following the finalization of the list of positions to be eliminated, the Human Resources division at NIST began a review of each affected employee's "retreat rights." Under this process, an employee affected by a RIF retains a right of assignment (a right to "retreat") to a permanent position that he or she formerly held—or to a permanent position substantially similar to one formerly held—if: (1) the position is occupied by an employee in the same tenure group and subgroup as the affected employee, (2) the employee occupying the position has less service than the affected employee, (3) the position is in the affected employee's career path, and (4) the position resides in the same or next lower pay band as the affected employee's terminated position. As to Cellarosi, Human Resources determined that there were no available positions to which he could retreat.

Pursuant to procedure, Human Resources also performed a qualification analysis, which involves a review of all job series in each affected employee's career path at the same or next

lower pay band to determine if there are any positions for which an employee might be qualified. Where an affected employee meets the minimum qualifications for one or more positions, the employee is given the opportunity to replace the current holder of one of the positions, provided the current position holder has less service tenure than the affected employee. As to Cellarosi, Human Resources determined that there were no positions at Cellarosi's pay band for which he met the minimum qualifications. Ultimately, however, the Agency identified a position at a lower pay band, ZP-1301-III, for which Cellarosi did meet the minimum qualifications. At the time, the position was occupied by Joylene Thomas, then a 32-year-old scientist in the Measurement Services Division.

During a meeting on August 28, 2002, the Agency formally notified Cellarosi that, effective November 1, 2002, his position would be eliminated as part of a RIF. But on that same day, the Agency offered him Thomas's position, which he accepted. Soon after, on October 15, 2002, Freiman offered Cellarosi the alternative option of a Voluntary Separation Incentive Payment whereby Cellarosi would receive full retirement benefits as well as the opportunity to return to NIST for three years as an independent contractor at a pay rate of $90,000 per year. Cellarosi declined the offer.

On November 3, 2002, Cellarosi assumed Thomas's position in the Measurement Services Division. Although this new position was at a lower pay band, the Agency did not in fact reduce Cellarosi's salary. On January 10, 2003, Thomas was separated from the federal service and to date, with the exception of the single position for which funding was restored, the original nine positions selected for the RIF remain abolished.

On January 28, 2003, not long after Cellarosi assumed his new position in the Measurement Services Division, the Agency offered him a second opportunity to take contractor

status on the condition that he retire, but he again refused. Although the Agency later notified Cellarosi, in May 2004, that his new position would be eliminated as part of another RIF, this notification was later rescinded.

Both before and after the RIF actions, Cellarosi's job performance was consistently characterized as unremarkable. According to Sandy Dapkunas, Cellarosi's first-level supervisor from 1996 until January 2002, his performance was "satisfactory and below average." Dapkunas also maintains that Cellarosi typically took "longer than necessary to accomplish jobs and/or projects." Similarly, Phoebe Fagan, another supervisor who oversaw Cellarosi from July 2003 through July 2004, states that his productivity was inferior as compared to his peers. Specifically, Fagan asserts that Cellarosi's performance was low "compared to others who worked part-time and produced more."

Cellarosi's official performance ratings also suggest unexceptional performance. For fiscal year 2002, he received a performance rating of 65 out of 100, a score which ranked 36th among the 36 ZP-level employees in the laboratory. Only employees who scored above the median rating of 80 received performance bonuses in 2002. For fiscal year 2004, Cellarosi again received a performance rating of 65 out of 100. That year no ZP-level employee with a score below 70 received a performance bonus. Neither Cellarosi's documents nor those of the Agency include performance ratings for fiscal years 2001, 2003, and 2005.

On February 9, 2003, Cellarosi filed a formal complaint of employment discrimination with the Department of Commerce. In it, he alleged that the Agency had engaged in employment discrimination on the basis of his age and in retaliation for his EEO counseling activities when it: (1) denied him a performance pay increase or bonus for fiscal year 2002 and (2) downgraded

Cellarosi's pay band to ZP-III following the RIF. On August 28, 2006, the Agency issued its final decision, finding that Cellarosi was not a victim of unlawful discrimination or retaliation.

On July 30, 2004, Cellarosi filed a second complaint of employment discrimination, this time alleging that the Agency had engaged in employment discrimination on the basis of sex, age, national origin, and in retaliation for prior EEO activity when it: (1) assigned him an unfavorable fiscal year performance rating and denied him a performance pay increase or bonus for fiscal year 2004 and (2) removed his name from an Agency reference publication. On August 1, 2006, the Agency issued its final decision, again finding that Cellarosi was not a victim of unlawful discrimination or retaliation.

Cellarosi thereafter sued the Agency in this Court, claiming that, on the basis of his age and in retaliation for his activity as an Agency-employed EEO Counselor, the Agency had subjected him to: (1) a RIF, (2) non-payment of performance bonuses, and (3) a hostile work environment.

## II.

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must review all well-pleaded allegations in the complaint to determine whether such allegations could possibly entitle the plaintiff to relief. *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). A court may also consider documents outside of the pleadings, without converting the motion to one for summary judgment, provided the documents are integral to and explicitly relied upon in the complaint. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Thus, where, as here, the plaintiff's judicial complaint relies on administrative complaints, the administrative documents may be considered in ruling on a motion to dismiss,

without converting the Rule 12(b)(6) motion into a Rule 56 motion. *See Phillips*, 190 F.3d at 618.

Because the Court need go no further than the administrative complaints to dispose of Cellarosi's bonus-related claims for fiscal years 2001, 2003, and 2005, the Court will consider these claims under the Agency's Motion to Dismiss. The Court will consider all remaining claims under the Agency's Motion for Summary Judgment, beginning in Part IV hereof.

## III.

The Agency argues that Cellarosi's claims regarding denial of performance bonuses in fiscal years 2001, 2003, and 2005 should be dismissed because he failed to exhaust administrative remedies as to them. The Court agrees.

Under both Title VII and the ADEA, a claimant's failure to exhaust administrative remedies before filing suit in federal court mandates dismissal of the complaint. *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006). A federal employee who believes he has been subjected to age discrimination must initiate EEO action by filing an informal complaint within 45 days of the alleged discriminatory action. 29 C.F.R. § 1614.105(a)(1). In general, failure to initiate EEO action within 45 days is grounds for dismissal of the employee's claim. *See, e.g.*, *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985); *Lorenzo*, 456 F. Supp. 2d at 734. In the present case, it is undisputed that Cellarosi never filed an EEO complaint for the Agency's failure to award him performance bonuses in fiscal years 2001, 2003, and 2005. Although he filed timely complaints for 2002 and 2004, his EEO complaints made no reference to other fiscal years. Consequently, dismissal of Cellarosi's bonus-related claims for fiscal years 2001, 2003, and 2005 is appropriate.

Cellarosi attempts to salvage his claims for 2001, 2003, and 2005 on the basis of the continuing violations doctrine. Under this doctrine, an employee's claim is not time-barred—even for failure to initiate timely EEO action—where the alleged discriminatory act is part of an "ongoing unlawful employment practice" for which a claim has been timely filed. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 107 (2002). But the continuing violations doctrine has no place here. The Supreme Court has held that such acts as termination, failure to promote, denial of transfer, refusal to hire, and pay-setting decisions are discrete, easily identifiable acts and are not subject to inclusion under the continuing violations doctrine. Such acts must be timely raised or they are forever barred. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 127 S. Ct. 2162, 2165 (2007) (holding that pay-setting decisions are discrete acts and therefore not subject to inclusion under the continuing violations doctrine); *Morgan*, 536 U.S. at 113-14 (holding that termination, failure to promote, denial of transfer, and refusal to hire are discrete acts). Here, the non-payment of a performance bonus, like a termination, a denial of transfer, or a pay-setting decision, is a discrete, easily identifiable event not covered by the continuing violations doctrine.

Accordingly, the Agency's Motion to Dismiss is GRANTED as to Cellarosi's claims for performance bonuses for fiscal years 2001, 2003, and 2005.[4]

## IV.

A party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). While all justifiable inferences are to be drawn in favor of the non-movant, such inferences must "fall within the range of reasonable probability and not be

---

[4] The Court notes that even if Cellarosi were granted leave to amend his Complaint to add a claim for the Agency's failure to award him a bonus or performance pay increase in 2006, that claim would be subject to the same outcome for failure to exhaust administrative remedies.

so tenuous as to amount to speculation or conjecture." *Thompson Everett, Inc. v. Nat'l Cable Adver., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995). Summary judgment procedure "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation omitted). Trial judges have an "affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24). A court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Where the plaintiff fails to meet this burden, the defendant should not be required to undergo "the considerable expense of preparing for and participating in a trial." *Hayes v. Hambruch*, 841 F. Supp. 706, 709 (D. Md. 1994) (Harvey, J.), *aff'd,* 64 F.3d 657 (4th Cir. 1995).

Even though intent is important in employment discrimination cases, the statutory purpose of summary judgment applies in no lesser degree to these types of cases than to commercial or other areas of litigation. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) ("The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion."). In the employment discrimination context, a subjective, even if genuine, belief of discrimination will not shield a non-moving plaintiff from a grant of summary judgment. *See Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988).

## V.

To prove disparate treatment under Title VII or the ADEA, the plaintiff has the burden of establishing discriminatory intent. The plaintiff can meet this burden either by presenting direct evidence of discriminatory animus, or through the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802 (1973); *see also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 311 (1996) (assuming, without explicitly holding, that the *McDonnell Douglas* framework applies in ADEA cases). Because Cellarosi offers no direct evidence of discriminatory animus,[5] his disparate treatment claims are properly considered under the three-part *McDonnell Douglas* framework.

Under *McDonnell Douglas*, to create an inference of discrimination, the plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. The central focus of the inquiry is whether the employer has treated some people less favorably than others because of their membership in a protected class. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (quoting *Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)).

If the plaintiff establishes a *prima facie* case, a presumption of discrimination arises, which the employer may rebut by articulating a legitimate non-discriminatory reason for its employment decision. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The employer's burden is merely one of production, not persuasion. *Id*. at 255-56. If the employer meets this burden, the presumption raised by the plaintiff's *prima facie* case is rebutted and the factual inquiry proceeds to a "new level of specificity." *Id*. at 255.

---

[5] The affidavit submitted by Said Jahanmir, who claims that the ages and retirement eligibility of certain individuals on the RIF list were discussed during a Group Leader meeting, does not constitute direct evidence of discriminatory animus. As discussed *infra*, Jahanmir's affidavit does not establish a clear nexus between the alleged discriminatory statements and the RIF decision, since he does not claim that the comments were made by Long or Freiman, the supervisors responsible for the RIF decisions. Moreover, the initial list of positions to be eliminated via the RIF was compiled by Long and Freiman prior to the Group Leader meeting.

At that juncture, the plaintiff must prove that "the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination." *Id*. at 253; *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989). The ultimate burden of showing that the employer intentionally discriminated remains at all times with the plaintiff. *Burdine*, 450 U.S. at 253. Even if the plaintiff demonstrates a *prima facie* case and sufficient pretext, however, the defendant will still be entitled to judgment as a matter of law if "no rational fact finder could conclude that the action was discriminatory." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000); *see also Gillins v. Berkeley Elec. Coop., Inc.*, 148 F.3d 413, 416-17 (4th Cir. 1998) (explaining that the plaintiff must develop some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action).

## VI.

Cellarosi claims that the Agency subjected him to a RIF and refused to award him bonuses on account of his age. The Court rejects these claims. Cellarosi has failed to establish a *prima facie* case of age discrimination. Even assuming he could establish a *prima facie* case, the Agency has articulated legitimate, non-discriminatory reasons for its employment decisions, which Cellarosi cannot show are pretextual.

## A.

The Agency does not argue that Cellarosi has failed to establish a *prima facie* case of age discrimination, but the Court *sua sponte* finds that he has not. To establish a *prima facie* case of age discrimination, a claimant must show that: (1) he is at least 40 years old; (2) he was subjected to an adverse employment action, such as discharge or demotion; (3) he was performing the job satisfactorily, meeting the employer's legitimate expectations; and (4) the

discharge or demotion occurred under circumstances that raise a reasonable inference of unlawful discrimination. *See O'Connor*, 517 U.S. at 310. Cellarosi's claims falter on the third and fourth elements.[6]

With respect to the third element, Cellarosi's performance evaluations and ratings indicated a level of performance below his employer's legitimate expectations. The evidence suggests that his productivity was significantly inferior as compared to his peers, including "others who worked part-time and produced more." In addition, Cellarosi's 2002 performance rating ranked 36th among the 36 ZP-level employees in the laboratory. These facts, which Cellarosi does not dispute,[7] suggest a low level of job performance.

With respect to the fourth element, the Agency's RIF action and non-payment of performance bonuses did not occur under circumstances that raise a reasonable inference of unlawful discrimination. As to the RIF, the ages of the employees chosen were consistent with the ages of the 36 ZP-level employees in the laboratory as a whole. This suggests the absence of any intent to target employees on the basis of their age. The statements reported by Said Jahanmir amount to no more than "general or ambiguous" statements regarding retirement eligibility and are therefore insufficient to establish evidence of age discrimination. *See, e.g.*, *Mereish v. Walker*, 359 F.3d 330, 336-37 (4th Cir. 2004) (holding that "general or ambiguous remarks referring to the process of generational change create no triable issue of age

---

[6] Some Fourth Circuit cases apply a RIF-specific *prima facie* case standard, which requires the plaintiff to show that: (1) he is a member of a protected class, (2) he was selected from a larger group or territory for termination, (3) he was performing at a level substantially equivalent to the lowest level of those retained in the group or territory, and (4) the process of selection produced a residual work force of persons in the group or territory containing some unprotected persons who were performing at a lower level than that at which the plaintiff was performing. *Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1418 (4th Cir. 1991); *Rudolph v. Hechinger Co.*, 884 F. Supp. 184, 187 (D. Md. 1995). Here, however, the Court believes that the more generally applicable standard is appropriate, since position funding—not relative performance—was the basis for the Agency's RIF decisions. *See Blistein v. St. John's Coll.*, 74 F.3d 1459, 1467-68, 1470 (4th Cir. 1996).

[7] Cellarosi claims the Agency did not follow its own procedures in assigning performance ratings. However, he does not show that his ratings were inconsistent with his performance, nor does he directly challenge his supervisors' unflattering comments regarding his job performance.

discrimination"); *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511-12 (4th Cir. 1994) (holding that the statement "there comes a time when we have to make way for younger people" is insufficient to create any inference of age bias because it is a "stray remark that merely reflects a fact of life"). Moreover, Cellarosi has failed to establish a nexus between the alleged discriminatory statements and the RIF decision, since, as previously noted, Jahanmir does not claim that the alleged comments were made by Long or Freiman, the supervisors responsible for the RIF decisions.[8] More to the point, the Court notes that the only person who lost a job as a result of the elimination of Cellarosi's position was Thomas, a 32-year-old employee whose federal service was terminated so that Cellarosi could remain employed with the Agency. That fact alone severely undermines Cellarosi's contention that the Agency's RIF decisions were motivated by discriminatory animus. With regard to his bonus claims, Cellarosi has failed to offer any evidence establishing that the Agency's decisions to deny him performance bonuses were in any way motivated by age discrimination.

For these reasons, the Court finds that Cellarosi has failed to establish a *prima facie* case of age discrimination.

## B.

Assuming for the sake of argument, however, that Cellarosi could establish a *prima facie* case of discrimination, the Agency has provided legitimate, non-discriminatory reasons for its employment decisions which Cellarosi is incapable of discrediting as pretext. With respect to the RIF, the Agency has indicated that its decision to eliminate Cellarosi's position was necessitated by a budget shortfall and the elimination of external funding for Cellarosi's headlamp research work. As for the non-payment of bonuses, the Agency has indicated that its decisions were based

---

[8] Alleged discriminatory statements are insufficient to give rise to a reasonable inference of unlawful discrimination where there is no established nexus between the alleged statements and the adverse employment action. *See EEOC v. Clay Printing Co.*, 955 F.2d 936, 942 (4th Cir. 1992).

upon Cellarosi's performance ratings, which fell below the thresholds required for performance bonuses.

Federal regulations provide that a government agency may separate an individual from federal service pursuant to a RIF for one of the following bona fide reasons: lack of work, shortage of funds, insufficient personnel ceiling, reorganization, the exercise of reemployment rights or restoration rights, or reclassification of an employee's position due to erosion of duties. 5 C.F.R. § 351.201(a)(2). Once a bona fide reason has been established, courts will not second-guess an agency's decision to abolish a position. *See Mereish*, 359 F.3d at 339. Here, the Agency has offered a bona fide reason for abolishing Cellarosi's position through a RIF: a reorganization resulting from a change in program priorities and budget constraints. Cellarosi has not shown that the Agency's justification for the RIF is "unworthy of credence," nor has he offered "other forms of circumstantial evidence sufficiently probative of" discrimination. *See, e.g.*, *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 409 n.12 (4th Cir. 2005); *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). Consequently, he has failed to show that the Agency's proffered reason for its RIF decision is pretextual.

It is also well settled that "[j]ob performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996). Thus, the Agency's justifications for its decisions to deny Cellarosi performance bonuses in 2002 and 2004—namely, Cellarosi's unremarkable performance ratings—constitute legitimate, non-discriminatory reasons. Once again, Cellarosi has offered no circumstantial evidence sufficient to show that the Agency's proffered reasons were pretextual.

In sum, no rational fact finder could conclude that the Agency subjected Cellarosi to the RIF or denied him performance bonuses because of age discrimination.

## VII.

Cellarosi's allegations and factual showings also fail to establish a *prima facie* case of disparate impact under the ADEA.[9] Disparate impact occurs where facially neutral employment practices "fall more harshly on one group than another and cannot be justified by business necessity." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003) (internal citations omitted). To establish a *prima facie* case of disparate impact, the plaintiff must: (1) isolate and identify the specific employment practice that selects employees in a pattern significantly different from the overall pool of employees and (2) establish causation by offering statistical evidence sufficient to show that the practice in question has in fact had a disparate impact on older employees. *See, e.g.*, *Watson v. Ft. Worth Bank and Trust*, 487 U.S. 977, 994 (1988) (applying disparate impact analysis in a case involving allegations of racially imbalanced promotion decisions); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975) (allegations of racially imbalanced pre-employment testing); *Axel v. Apfel*, 171 F. Supp. 2d 522, 526 (D. Md. 2000) (allegations of age and sex disparities in promotion decisions).

Cellarosi's claim fails because the statistical evidence does not show that the Agency selected older employees for the RIF in a pattern significantly different from that of the laboratory as a whole. Quite to the contrary, the statistical evidence before the Court reveals that: (1) the average age of the scientists in the laboratory was over 50 years at the time of the RIF, (2) there were only six scientists in the laboratory under the age of 40, and (3) more than half of the scientists in the laboratory were over the age of 50. Given this distribution of ages, it is

---

[9] The Supreme Court has held that disparate impact claims are cognizable under the ADEA. *Smith v. City of Jackson*, 544 U.S. 228, 231 (2005).

altogether plausible that the average age of the scientists selected for the RIF would be 52 years. Moreover, the Court again notes that the only person who lost a job as a result of the elimination of Cellarosi's position was Thomas, a 32-year-old employee whose federal service was terminated so that Cellarosi could remain employed with the Agency. In light of these facts, the Court concludes that Cellarosi has failed to show a *prima facie* case of disparate impact.

### VIII.

Cellarosi has also failed to establish a *prima facie* case of retaliation. In order to establish a *prima facie* case of retaliation under Title VII or the ADEA, a plaintiff must show that: (1) he engaged in protected activity, such as the filing of an EEO complaint; (2) the employer took adverse employment action against the plaintiff; and (3) there was a causal connection between the protected activity and the adverse action. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998). Because the case law on whether performance as an EEO Counselor constitutes protected activity is sparse and indeterminate,[10] the Court will assume, *arguendo*, that Cellarosi's performance as an EEO Counselor constitutes protected activity. Nevertheless, his claim fails on the third element, which requires that he establish a causal connection between his performance as an EEO Counselor and the Agency's decisions to eliminate his position and deny him performance bonuses.

To establish a causal connection, a plaintiff must show that the employer had knowledge of the alleged basis for its actions. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (holding that an employer's knowledge of the alleged basis for its actions is absolutely essential to the establishment of a *prima facie* case of retaliation). A

---

[10] *Compare Matta v. Snow*, No. Civ. A. 02-862 (CKK), 2005 WL 3454334, at *24-25 (D.D.C. Dec. 16, 2005) (holding that mere performance as an EEO Counselor, without more, does not constitute "oppositional activity" protected by Title VII) *with Pendleton v. Rumsfeld*, 628 F.2d 102, 108-09 (D.C. Cir. 1980) (contemplating that the activities of an EEO Counselor may or may not constitute protected activity).

lengthy lapse of time between the alleged basis for the employer's decisions and the adverse employment action tends to preclude satisfaction of the causation element of the *prima facie* case of retaliation. *See, e.g.*, *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) (per curiam) (holding that a period of 20 months between the protected activity and adverse action "suggests, by itself, no causality at all"); *Price*, 380 F.3d at 213 (finding that the passage of 9-10 months may negate an inference of causation); *Clark v. Chrysler Corp.*, 673 F.2d 921, 930 (7th Cir. 1982) (holding that a two-year period of time negates an inference of causation); *Burrus v. United Tel. Co.*, 683 F.2d 339, 343 (10th Cir. 1982) (holding that a three-year period of time negates an inference of causation). Here, though Cellarosi claims that his supervisors were aware of his role as an EEO Counselor, he alleges no facts showing that the supervisors responsible for the RIF and bonus decisions had any knowledge of, or were in any way motivated to act in reprisal based on, his performance in that role. Indeed, the lengthy lapse of time—three years—between Cellarosi's counseling of the high-level NIST official and the RIF and bonus decisions negates the causation element.

The Court finds that Cellarosi has failed to establish a *prima facie* case of retaliation.

## IX.

Nor has Cellarosi established a *prima facie* case of hostile work environment.

To establish a *prima facie* case of hostile work environment, the plaintiff must show that: (1) he experienced unwelcome harassment, (2) the harassment was based on his age, (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere, and (4) there is some basis for imposing liability on the employer. *See Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006). As discussed above, Cellarosi has failed to offer any evidence showing that the Agency's alleged actions were motivated by age

discrimination, resulting in non-fulfillment of the second element. In addition, the incidents

alleged by Cellarosi were not sufficiently severe and pervasive as to alter the conditions of his

employment and to create an abusive atmosphere.[11] Merely unseemly employer behavior, even if

callous and offensive, will not support a hostile work environment claim. *See, e.g.*, *Bass v. E. I.*

*DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (finding that allegations "of a

workplace dispute regarding [the plaintiff's] reassignment and some perhaps callous behavior by

her superiors . . . do not describe . . . severe or pervasive gender, race, or age-based activity");

*Karim v. Staples, Inc.*, 210 F. Supp. 2d 737, 754 (D. Md. 2002) (citing *Bolden v. PRC Inc.*, 43

F.3d 545, 551 (10th Cir. 1995) (finding that sporadic incidents of an insensitive nature, including

the use of two racial epithets, were not sufficiently severe and pervasive to support a hostile

work environment claim)). Here, the alleged actions—two RIFs, a refusal to recognize Cellarosi

for his professional accomplishments, and a reduction of office space, among other alleged

wrongs—though perhaps rude or insensitive, were not sufficiently severe and pervasive to

support a hostile work environment claim.

## X.

In a final effort to avoid summary judgment, Cellarosi claims that the Agency's Motion

is untimely, inasmuch as discovery has not yet begun. He maintains that there are several

material facts which can only be developed through the discovery process. The Court finds that

---

[11] As support for his hostile work environment claim, Cellarosi alleges that the Agency subjected him to the following: (1) two RIF actions, the second of which was later rescinded; (2) a material change in position description and job responsibilities after the first RIF action; (3) numerous inquiries regarding his retirement plans; (4) repeated contract offers contingent upon retirement, allegedly in violation of Agency policy; (5) notification of the second RIF action within view and earshot of other employees; (6) comments, allegedly made during notification of the second RIF action, that Cellarosi did not "look [his] age," that there was "no place for [him] here," and that Cellarosi "should go to personnel and get [his] walking papers"; (7) refusal to publicly recognize Cellarosi for his professional and scientific accomplishments, including his elevation to Fellow of the American Academy of Forensic Sciences; (8) removal of Cellarosi's name from an Agency publication that he authored; (9) loss of office space; (10) denial of performance pay and bonuses; and (11) general embarrassment, harassment, and humiliation in an effort to coerce him to retire. Cellarosi also claims that these alleged actions have caused him psychological harm, high blood pressure, double vision, and severe migraine headaches.

Cellarosi has failed to meet the requirements for a Rule 56(f) Motion. A party opposing summary judgment under Rule 56(f) must file an affidavit that "particularly specifies legitimate needs" and explains how, if the needs were met, the facts unearthed would create a genuine issue of material fact precluding summary judgment. *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995). Simply asserting that discovery is necessary will not avoid summary judgment. *Id.* (citing *Hayes v. North State Law Enforcement Officers Ass'n*, 10 F.3d 207, 215 (4th Cir. 1993)). Where a party opposing summary judgment and seeking a continuance for further discovery "fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate." *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828, 832-33 (10th Cir. 1986). At a minimum, the party opposing summary judgment must show why he cannot now obtain affidavits or other factual material to oppose the present motion. *Burtnick v. McLean*, 874 F. Supp. 698, 699 (D. Md. 1995).

Cellarosi has filed no affidavit specifying any facts essential to his opposition to the Agency's Motion for Summary Judgment that discovery might reveal. Moreover, despite claiming that there is additional information that he would "like to uncover" via further discovery, Cellarosi does not indicate why he has been unable to obtain such information over the course of the five years since the 2002 RIF. In any event, the Court is unconvinced that the documents Cellarosi seeks would give rise to a genuine issue of material fact that would preclude summary judgment. The requirements for a successful Rule 56(f) Motion have not been met.

**XI.**

For the foregoing reasons, the Court GRANTS the Agency's Motion to Dismiss as to Cellarosi's performance bonus claims for fiscal years 2001, 2003, and 2005. The Court GRANTS the Motion for Summary Judgment as to Cellarosi's remaining claims.

A separate Order will ISSUE.


_____/s/_____
PETER J. MESSITTE
July 9, 2007                    UNITED STATES DISTRICT JUDGE